UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| FARMERS UNION SERVICE ASSOCIATION OF SOUTH DAKOTA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES MURPHY,<br><br>Defendant. | 4:25-CV-04079-RAL<br><br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS SECOND COUNT OF COUNTERCLAIM |

Plaintiff Farmers Union Service Association of South Dakota (Farmers Union) brought this action against its former independent contractor, Defendant James Murphy, for breach of contract and tortious interference with business relationships or expectancies arising from the cessation of Murphy's work as an agent for Farmers Union. Doc. 1. Murphy filed an Answer, Counterclaim, and Third-Party Complaint, making two counterclaims against Farmers Union, one for breach of contract and the other based on the theory of respondeat superior for an alleged assault by a Third-Party Defendant. Doc. 5. The parties later stipulated to dismiss Murphy's claim against the Third-Party Defendant without prejudice. Docs. 18, 19. Farmers Union now moves to dismiss Murphy's second counterclaim for assault under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 8. For the reasons explained, this Court grants Farmers Union's Motion to Dismiss, Doc. 8.

I.  **Factual Allegations**

This Opinion and Order makes no findings of fact but derives the facts from Murphy's Counterclaim and supporting record materials. This Court accepts all Murphy's factual allegations

1

as true and makes all inferences in Murphy's favor as the nonmoving party. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012).

Farmers Union is an insurance agency serving almost 12,000 customers in South Dakota and servicing over 23,000 policies issued to South Dakota policyholders. Doc. 1 ¶ 6; Doc. 5 ¶ 6. Murphy entered into a Local Agents Agreement (LAA) on October 1, 2010, with Farmers Union. Doc. 1 ¶ 11; Doc. 5 ¶ 11. Under the LAA, Murphy was an independent contractor for Farmers Union selling and servicing insurance policies for customers mainly in and around Yankton County, South Dakota. Doc. 1 ¶¶ 11–12; Doc. 5 ¶¶ 11–12. The parties, also on October 1, 2010, entered into a "Farmers Union Service Association of South Dakota Agent Contract Termination Program ('CTP')." Doc. 5 ¶ 89. Under the CTP, Murphy was to receive a "Contract Termination Benefit" upon termination of the LAA if he had provided at least ten years of service and was not terminated for cause. Id. ¶¶ 90–91.

Farmers Union hosts annual trips for its top agents, which are typically held in tropical destinations during the winter months. Id. ¶ 96. Farmers Union invited Murphy to every annual trip—thirteen such trips in total—after his first year of service. Id. ¶ 97. In March of 2022, Farmers Union hosted its annual trip in Punta Cana, which both Murphy and his wife attended. Id. ¶ 98. Randy Burkel, a manager for Farmers Union in North Dakota, also attended the annual trip in 2022. Id. ¶ 99. One evening during a dinner, Burkel approached Murphy while Murphy was sitting at a table. Id. ¶ 100. "Burkel wrapped his arm around Murphy's neck, pulled him down off of the chair, and began taunting, calling him 'a f**king joke' and using other cruel, foul language." Id. Although the incident was reported within fifteen minutes and "ruined the entire trip for Murphy and his wife," Farmers Union never took any steps to redress the incident. Id.

¶¶ 101, 103. Murphy did not name Burkel as a third-party defendant, nor allege a tort claim based on Burkel's actions.

Farmers Union held its 2024 annual trip for top agents in Costa Rica, which Murphy and his wife attended. Id. ¶ 104. Also attending this trip was Dave Murphy ("Dave"),[1] Farmers Union's Sales Director of Captive Agents based out of North Dakota who had supervisory authority over Murphy and other agents working in South Dakota. Id. ¶¶ 65–66, 105. During this trip in April of 2024, Murphy was at the hotel bar joking about "who's the best Murphy here?" Id. ¶ 106. Dave, also at the bar, "became irate, hostile, and aggressive towards Murphy, threatening to 'kick his ass,'" thereby putting Murphy in fear of bodily harm. Id.

Murphy reported this incident to Nick Honke, a South Dakota manager, within a month of returning home from the trip. Id. ¶ 107. Although Honke told Murphy that he would investigate the matter, Murphy did not receive any communication from Honke for a month. Id. ¶¶ 107–08. Murphy called Honke to inquire about the investigation to which Honke replied, "Oh, you're serious?" Id. ¶ 108. Curt Soehl, Farmers Union's Personal Lines Production Manager for South Dakota, later told Murphy that "it would not do any good to report the Dave [] attack because Farmers Union would not do anything about it." Id. ¶ 109.

In January of 2025, Murphy reported his incident with Dave to Karla Hofhenke, Executive Director of Farmers Union. Id. ¶ 110. Hofhenke informed CEO Mark Anderson and Chief Sales, Marketing and Brand Officer Kevin Ressler about the April 2024 incident. Id. ¶¶ 72, 110. On January 8, 2025, Anderson and Ressler called Murphy to hear his account of the event. Id. ¶ 111.

---

[1] This Court will refer to Dave Murphy as "Dave" to prevent confusion with Defendant James Murphy, whom this Court refers to as "Murphy."

3

A week later, Anderson called Murphy and characterized the incident as nothing more than "locker room banter" and said that Murphy should not be upset about it. Id.

On February 20, 2025, Murphy and his wife met with Anderson and Ressler to discuss Murphy's grievances with Farmers Union. Id. ¶ 72. At this meeting, Murphy informed Farmers Union of his intention to leave his agency relationship with Farmers Union and operate his own insurance agency independent of Farmers Union. Id. ¶ 76; see id. at 18. Murphy alleges his decision to leave Farmers Union was "a result of the poor leadership [he] experienced at Farmers Union." Id. ¶ 112. Murphy told Anderson and Ressler that he was willing to work with Farmers Union by staying longer than thirty days for a smooth transition and being "more than willing to buy [his] book of business." Id. ¶¶ 74–75.

On February 25, 2025, four Farmers Union managers showed up unannounced at Murphy's office to seize all files, documents, and paperwork related to Farmers Union. Id. ¶ 78. Farmers Union also denied Murphy access to his computer, email account, and Farmers Union's online systems. Id. ¶ 79. Due to Farmers Union's actions and his inability to work, Murphy believed his termination as an agent of Farmers Union was effective immediately. Id. ¶¶ 80–81. Murphy then took steps to operate his own insurance agency independent of Farmers Union including notifying his clients that he was no longer with Farmers Union. Id. ¶¶ 82–83.

Farmers Union sued Murphy for breach of contract, alleging violations of the non-solicitation provisions, and tortious interference with business relationships or expectancies. Doc. 1 at 8–9. Murphy answered the Complaint, counterclaimed, and brought a Third-Party Complaint against Dave for assault regarding his actions on the 2024 annual trip. Doc. 5. The Counterclaim asserted actions for breach of contract and assault, alleging respondeat superior to impose liability for the assault claim, against Farmers Union. Id. at 22–24. Farmers Union filed a Motion to

Dismiss the assault claim[2] against Farmers Union. Doc. 8. The parties have since stipulated to a dismissal without prejudice of the Third-Party Complaint against Dave, Doc. 18, which this Court granted, Doc. 19.

## II. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction can be either facial or factual in nature. Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018). In both circumstances, the [counterclaim] plaintiff has the burden of proving subject matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013). "Courts must accept a [counterclaim] plaintiff's factual allegations as true" and make all inferences in the [counterclaim] plaintiff's favor "but need not accept a [counterclaim] plaintiff's legal conclusions." Retro Television Network, Inc., 696 F.3d at 768–69. "The [counterclaim] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." Stalley v. Cath. Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citation omitted). When ruling on a Rule 12(b)(6) motion, a court generally ignores materials outside the pleadings but may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to

---

[2] Farmers Union does not ask this Court to dismiss Murphy's breach of contract claim. Doc. 9 at 2 n.1.

the complaint whose authenticity is unquestioned." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up and citation omitted).

To avoid dismissal under Rule 12(b)(6) for failure to state a claim, the counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [counterclaim] plaintiff pleads factual content that allows the court to draw the reasonable inference that the [counterclaim] defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a [counterclaim] defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a [counterclaim] defendant's liability, it stops short of the line between possibility and plausibility of entitlement for relief." Id. (cleaned up and citation omitted). A [counterclaim] plaintiff fails to state a claim when the pleadings contain mere "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

Murphy alleges federal supplemental jurisdiction over his counterclaims under 28 U.S.C. § 1367. Doc. 5 ¶ 67. Murphy has not pleaded that federal diversity jurisdiction exists under 28 U.S.C. § 1332. Indeed, he has not pleaded an amount in controversy, which is necessary to establish diversity jurisdiction under § 1332. Here, Farmers Union makes a facial challenge under Rule 12(b)(1) by arguing that Murphy's second count of the counterclaim for assault is not within federal supplemental jurisdiction and alternatively argues that the assault counterclaim fails to state a claim on which relief can be granted. Doc. 9 at 6–17.

### III. Discussion and Analysis

#### A. Whether the Second Count of the Counterclaim is Compulsory

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367. Under Federal Rule of Civil Procedure 13, counterclaims are either compulsory or permissive. Fed. R. Civ. P. 13. A compulsory counterclaim "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claims" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). Compulsory counterclaims are typically within federal jurisdiction when federal jurisdiction extends over the claims in the complaint. Compulsory counterclaims "are ancillary to the federal claims," and the district courts "properly assert[] jurisdiction over them." Tullos v. Parks, 915 F.2d 1192, 1194–95 (8th Cir. 1990) (citing Baker v. Gold Seal Liquors, 417 U.S. 467, 469 n.1 (1974) ("If a counterclaim is compulsory, the federal court will have ancillary jurisdiction over it even though ordinarily it would be a matter for a state court.")). The Eighth Circuit has articulated four tests to determine whether a counterclaim arises out of the same transaction or occurrence and thus is compulsory. Feed Mgmt. Sys., Inc. v. Brill, 518 F. Supp. 2d 1094, 1096 (D. Minn. 2007); see also Cochrane v. Iowa Beef Processors, Inc., 596 F.2d 254, 264 (8th Cir. 1979). The four parts "ask whether (1) the issues of fact and law raised by the claim and counterclaim are largely the same, (2) res judicata would bar a subsequent suit on the counterclaim, (3) substantially the same evidence supports/refutes the claim and counterclaim, and (4) there is

any logical relation between the claim and counterclaim." Stockdall v. TG Invs., Inc., 129 F. Supp. 3d 871, 877 (E.D. Mo. 2015) (citation omitted).

Permissive counterclaims are different. A permissive counterclaim is defined by exclusion, that is, a counterclaim that is brought against an opposing party and that is not compulsory is a permissive counterclaim. Fed. R. Civ. P. 13(b). Thus, if a counterclaim does not satisfy the four-part test for compulsory counterclaims, it is a permissive counterclaim.

Farmers Union brings claims for breach of contract and tortious interference with business relationships or expectancies arising from the cessation of Murphy's work as an independent agent for Farmers Union. Doc. 1. Farmers Union alleges that Murphy breached the LAA by soliciting or selling insurance policies to Farmers Union's customers, holding himself out as a Farmers Union agent after his termination, and refusing to return property of Farmers Union. Doc. 1 ¶¶ 42–45. Murphy's first counterclaim for breach of contract is a compulsory counterclaim. Doc. 5. Murphy's breach of contract counterclaim alleges Farmers Union constructively terminated Murphy's agency; the termination was a breach of the contract because it was not for cause and without notice; even if the termination was for cause, the bases for cause arose after the constructive termination; and Farmers Union has failed to pay Murphy commissions he is owed. Id. ¶¶ 114–23. Murphy further alleges that Farmers Union breached the CTP because Farmers Union's failure to pay Murphy is "premised upon the wrongful for-cause termination." Id. ¶¶ 124–26.

Murphy's second counterclaim alleges an assault perpetrated by Dave in April of 2024 in Costa Rica, claiming Dave's aggressive response that he would kick Murphy's ass threatened physical contact and placed Murphy in fear that such contact would occur. Id. ¶¶ 106, 129–30. Murphy then alleges that Dave was acting within the course and scope of his employment for

Farmers Union when he made the threat. Id. ¶¶ 129–32. The four-part test adopted in the Eighth Circuit makes clear that the counterclaim for assault is a permissive and not compulsory counterclaim.

First, the issues of law and fact raised by the Complaint and second count of the Counterclaim are not "largely the same." The breach of contract and tortious interference claims center on events in February and March of 2025 surrounding Murphy's cessation of his agency relationship with Farmers Union, when and how Murphy solicited Farmers Union's customers to move their policies, and contractual rights and language under the LAA and CTP. The assault counterclaim involves a single instance at a Costa Rica hotel bar some ten months before the cessation of Murphy's agency relationship with Farmers Union. There is no legal similarity between the assault counterclaim and the other claims. Second, the doctrine of res judicata would not bar separate and subsequent litigation of the assault claim because of the divergence in the fact and law for the assault counterclaim from the other contract-based claims. Third, the evidence to prove the contract claims does not overlap with the assault counterclaim.

Murphy argues that Farmers Union's refusal to take Murphy's report of Dave's threat seriously contributed to his decision to end his agency relationship with Farmers Union. To that extent, there is some logical connection, from Murphy's perspective and thinking, between the assault counterclaim and Murphy's departure to start his own insurance agency separate from Farmers Union, which makes the fourth factor under the Eighth Circuit test somewhat debatable. But it is Murphy's conduct, not his motive for leaving, that determines whether he is liable to Farmers Union, and Murphy does not allege that Farmers Union's mishandling of Dave's threat in Costa Rica to kick Murphy's ass is somehow part of Farmers Union's breach of the LAA or CTP. Thus, Murphy's Counterclaim for assault is a permissive counterclaim.

## B. Whether the Assault Counterclaim is within Supplemental Jurisdiction

A federal court in some instances may exercise supplemental jurisdiction over a permissive counterclaim. After all, the test for supplemental jurisdiction is whether the claims form part of the "same case or controversy," 28 U.S.C. § 1367(a), while the test for compulsory counterclaims is more limited to "the same transaction or occurrence," Fed. R. Civ. P. 13(a)(1). Although there was longstanding precedent requiring a federal court to have an "independent and adequate basis" to exercise jurisdiction over all permissive counterclaims, courts have rejected this proposition since the codification of supplemental jurisdiction in 28 U.S.C. § 1367 in 1990. See Jones v. Ford Motor Credit Co., 358 F.3d 205, 212–13 (2d Cir. 2004) ("After section 1367, it is no longer sufficient for courts to assert, without any reason other than dicta or even holdings from the era of judge-created ancillary jurisdiction, that permissive counterclaims require independent jurisdiction."); Channell v. Citicorp Nat'l. Servs., Inc., 89 F.3d 379, 385 (7th Cir. 1996) ("[T]he jurisdictional distinction between permissive and compulsory counterclaims was developed before Congress enacted 28 U.S.C. § 1367 to codify, and to an extent extend, the supplemental jurisdiction (formerly known as the pendent jurisdiction)."); Glob. NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 76 (1st Cir. 2010) ("In an issue of first impression for this court, we hold that 28 U.S.C. § 1367, enacted in 1990, gives federal courts supplemental jurisdiction over both compulsory and at least some permissive counterclaims"). The Eighth Circuit has not ruled on this specific issue, but both the Second and Seventh Circuits have reversed dismissals of permissive counterclaims for lacking an independent jurisdictional basis when there could be supplemental jurisdiction under 28 U.S.C. § 1367. See Jones, 358 F.3d at 216 (vacating district court's dismissal of permissive counterclaim); Channell, 89 F.3d at 387 (vacating district court's dismissal of permissive counterclaim).

As stated earlier, federal courts have supplemental jurisdiction over the counterclaim if it "form[s] part of the same case or controversy." 28 U.S.C. § 1367(a). "Claims within the action are part of the same case or controversy if they derive from a common nucleus of operative fact." Myers v. Richland Cnty., 429 F.3d 740, 746 (8th Cir. 2005) (cleaned up and citation omitted). "A plaintiff's claims derive from a common nucleus of operative fact if the claims are such that he would ordinarily be expected to try them all in one judicial proceeding." OnePoint Sols., LLC v. Borchert, 486 F.3d 342, 350 (8th Cir. 2007) (cleaned up and citation omitted). Yet, after the enactment of § 1367, the Second and Seventh Circuits have viewed supplemental jurisdiction over permissive counterclaims more broadly, noting "the constitutional limits of Article III as requiring only 'a loose factual connection between the claims.'" Jones, 358 F.3d at 213 (cleaned up) (quoting Channell, 89 F.3d at 385).

Farmers Union contends that Murphy's assault counterclaim does not fall within this Court's supplemental jurisdiction over permissive counterclaims because the assault counterclaim concerns an entirely different set of facts from the other claims involved. Doc. 9 at 10–11. Farmers Union argues that the assault claim would not be expected to be tried in the same judicial proceeding because it is a personal dispute and unrelated to the agency relationship between Farmers Union and Murphy. Id. at 11. Murphy counters that his departure was caused by "the poor leadership at [Farmers Union], including [Farmers Union]'s mishandling of his complaint about the Dave [] attack." Doc. 16 at 5. Murphy argues that the assault is part of the reason he left Farmers Union and thus relevant to the contract claims. Id. Murphy asserts that the counterclaim is related because it took place during a Costa Rica vacation event sponsored by Farmers Union and was perpetrated by a Farmers Union employee who was a superior to him. Id.

11

Lastly, Murphy contends that it is too early to determine the overlap, or lack thereof, of witnesses and evidence to the claims. Id. at 6.

This presents a close question of whether this Court has supplemental jurisdiction over the assault counterclaim. Whether there is a "common nucleus of operative fact" such that one would expect the claims to be tried in a single judicial proceeding is at best debatable. See Myers, 429 F.3d at 746. The nucleus of operative facts for the assault counterclaim centers on conduct that occurred in Costa Rica ten months before the cessation of Murphy's agency relationship with Farmers Union, though Murphy attributes his decision to leave the agency relationship in part to Farmers Union not taking the alleged assault seriously. The Second and Seventh Circuits have required only "[a] loose factual connection between the claims" to support supplemental jurisdiction over a permissive counterclaim. See Jones, 358 F.3d at 213 (quoting Channell, 89 F.3d at 385). The assault counterclaim is loosely connected to the contract claims in the sense that they both relate to Murphy being an agent for Farmers Union and Murphy claims that Farmers Union's mishandling of the alleged assault contributed to his decision to start his own agency.

This case is analogous to Envisn, Inc. v. Davis, No. 11-12246, 2012 WL 1672887 (D. Mass. May 11, 2012). In Davis, Plaintiff Envisn hired Defendant Davis as a consultant. Id. at *1. The owner and COO of Envisn called a meeting with Davis and an Envisn employee to discuss product issues. Id. Tensions in the meeting escalated when the owner demanded answers from the Envisn employee, at which time Davis attempted to speak. Id. The owner pointed at Davis "and told her 'be quiet,' in an aggressive voice." Id. When Davis attempted to speak again two minutes later, the owner "grabbed her shoulder with his right hand, yelled 'I told you to be quiet,' and pushed her." Id. Davis left the room, did not return to work, and emailed her resignation the next week. Id. Envisn sued Davis for violations of the Computer Fraud and Abuse Act and

Uniform Trade Secrets Act, misappropriation of trade secrets, and breach of a confidentiality and nondisclosure agreement. Id. Davis counterclaimed for breach of contract, payment of wages, and assault and battery. Id. Envisn moved to dismiss all counterclaims. Id. The district court in Envisn held that the assault and battery claim was sufficiently closely connected to the misappropriation claim to fall within the court's supplemental jurisdiction. Id. at *3. "[I]t is hard to imagine that the misappropriation claims would be tried without evidence of the circumstances under which Davis abruptly left the company and allegedly took the information."[3]  Id.

The decision in Envisn suggests that the allegations here establish enough of a common nucleus of facts to justify exercising supplemental jurisdiction over the assault counterclaim. The core of the complaint and first counterclaim concerns Murphy's cessation of his agency and contractual relationship with Farmers Union. It is not too far afield to allow to be tried with those matters a tort claim Murphy believes he has against Farmers Union that drove him, according to what he argues, to decide to leave his independent contractor position with Farmers Union.

### C. Whether Murphy Has Stated a Respondeat Superior Claim

Farmers Union also moves to dismiss the assault counterclaim for failing to state a claim for respondeat superior liability. Doc. 9 at 12. While federal law governs procedural matters such as the standard to dismiss a case for failure to state a claim, state law supplies the substantive law

---

[3] On the other hand, and somewhat oddly, the district court dismissed the state law claim for payment of wages and breach of contract. Envisn, Inc., 2012 WL 1672887, at *3. "A broad causal relationship is insufficient to confer supplemental jurisdiction. Some commonality of facts between claims and counterclaims alone does not constitute a common nucleus of operative fact." Id. (cleaned up and citations omitted). The fact that but for the assault the breach of contract and payment of wages claims would not have arisen was insufficient. Id. The district court concluded the wage and breach of contract claims rested on facts distinct from the other claims and declined to exercise jurisdiction over them. Id.

in this diversity jurisdiction case for when an entity like Farmers Union can be liable for assaultive conduct of an agent like Dave.

The parties did not brief which state's law applies to the assault counterclaim in this diversity jurisdiction case between a Nebraska resident (Plaintiff James Murphy) and South Dakota corporation (Farmers Union) regarding conduct of a North Dakota resident (Dave Murphy) that occurred in Costa Rica. Here, the respondeat superior claim involves the principal and agent relationship between Dave, a North Dakota resident, and his South Dakota principal, so either South Dakota or North Dakota law would govern. Neither the Complaint nor anything of record makes clear whether Dave was an employee or an independent contractor of Farmers Union or if they have a contract specifying which state's law governs their relationship. Fortunately, South Dakota and North Dakota law differs little in drawing from the Restatement (Second) of Agency for vicarious liability under the doctrine of respondeat superior. See Kirlin v. Halverson, 758 N.W.2d 436, 445–46 (S.D. 2008) (citing Restatement (Second) of Agency § 245 (Am. L. Inst. 1958) for relevant factors in determining the "scope of employment"); Nelson v. Gillette, 571 N.W.2d 332, 337 (N.D. 1997) (concluding all the elements of Restatement (Second) of Agency § 228 must be considered when determining the "scope of employment when committing an intentional act").

Under North Dakota law, "an employer is vicariously liable for the negligence of its employees while the employees are acting within the scope of their employment." Am. Nat. Fire Ins. Co. v. Hughes, 658 N.W.2d 330, 333 (N.D. 2003) (citations omitted). South Dakota law is the same. Kirlin, 758 N.W.2d at 444 ("[R]espondeat superior is well established as 'holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency.'") (citation and emphasis omitted). "The underlying rationale

for the doctrine is the employer's right to control its employee's conduct, and the employer's vicarious liability extends only to an employee's acts done on the employer's behalf and within the scope of the employee's employment." Hughes, 658 N.W.2d at 333 (citation omitted); see also Tammen v. Tronvold, 965 N.W.2d 161, 169 (S.D. 2021) ("The public policy underpinnings justifying the rule are clear: it is inherently unfair to penalize an employer by imposing unlimited liability . . . for the conduct of its employees over which it has no control and from which it derives no benefit.") (cleaned up and citation omitted).

North Dakota and South Dakota both look to the Restatement (Second) of Agency to determine if conduct was within the scope of employment for an intentional act such as the alleged assault at issue in the second counterclaim. Nelson, 571 N.W.2d at 335; Kirlin, 758 N.W.2d at 445–46. North Dakota uses the test set forth in Section 228 to determine whether an intentional act was within the scope of employment:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>    (a) it is of the kind he is employed to perform;
>    (b) it occurs substantially within the authorized time and space limits;
>    (c) it is actuated, at least in part, by a purpose to serve the master, and
>    (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Nelson, 571 N.W.2d at 335 (quoting Restatement (Second) of Agency § 228).

South Dakota uses a similar test under Section 245 to determine if an intentional act was within the scope of employment:

> A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant.

Kirlin, 758 N.W.2d at 446 (quoting Restatement (Second) of Agency § 245). South Dakota distills this section into a two-prong test: "(1) whether the purpose of the act was to serve the principal and (2) whether the act was foreseeable." Tammen, 965 N.W.2d at 169 (cleaned up and citation omitted). "Under the second prong, for an act to be foreseeable, the employee's conduct must not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business." Id. (cleaned up and citation omitted). South Dakota's two-prong test mirrors the third and fourth factors of North Dakota's four-factor test.

Regardless of which state's law applies, Murphy has not pleaded sufficient facts (as opposed to conclusions of law) to claim respondeat superior liability. The counterclaim for assault in relevant part alleges:

> 96. . . . Farmers Union hosts annual vacations ("summit trips") for top agents within the company, which is typically held in a tropical destination during the winter months.
> . . .
> 104. In April of 2024, the annual trip was in Costa Rica. Murphy and his wife also attended this trip.
> 105. Third Party Defendant Dave Murphy, Sales Director of Captive Agents, was in attendance as well. Dave had supervisory authority over Murphy.
> 106. On or about April 11, 2024, Murphy was sitting at a bar at the hotel in Costa Rica. He was joking about "who's the best Murphy here?" Dave was also present and became irate, hostile, and aggressive towards Murphy, threatening to "kick his ass," placing Murphy in fear of bodily harm.
> . . .
> 129. On or about April 11, 2024, Dave intended to cause either a harmful or offensive physical contact with Murphy, or an imminent apprehension of such contact.
> 130. Dave's conduct caused Murphy to fear such contact would immediately occur.
> 131. Murphy did not consent to the intended contact.
> 132. Dave committed these acts within the course and scope of his employment with Farmers Union, and Farmers Union is therefore liable under *respondeat superior*.
> 133. As a result of Dave's commission of the acts alleged herein, Murphy suffered injury.

Doc. 5 ¶¶ 96, 104–06, 129–33. Murphy in short has alleged that, on a business trip at a hotel bar in Costa Rica, he was joking with his supervisor, Dave, who shares his last name by saying "who's

16

the best Murphy here." Dave responded aggressively threatening to "kick his ass." Murphy then states a legal conclusion that "Dave committed these acts within the course and scope of his employment with Farmers Union, and Farmers Union is therefore liable under *respondeat superior*." Id. ¶ 132. There are no allegations that this is the kind of work Dave is employed to do, this occurred within the authorized time and space of employment, Dave's conduct was actuated at least in part to serve Farmers Union, or Farmers Union could expect or foresee such action by its agent Dave. See Restatement (Second) of Agency §§ 228, 245.

While the annual tropical vacation likely promoted morale, provided an incentive for Farmers Union agents to work hard, and allowed networking among Farmers Union agents, from these allegations this Court cannot infer that a verbal assault at a Costa Rica hotel bar somehow furthered Farmers Union's business to sell insurance or benefitted Farmers Union in any way. Rather, Dave's reaction to the joke displayed that he took it personally and overreacted with a threat. Murphy failed to plead any factual allegations of how Dave's alleged assault was motivated by a purpose to serve Farmers Union rather than himself. See Mentz v. United States, 359 F. Supp. 2d 856, 861 (D.N.D. 2005) ("A primary inquiry under North Dakota law is whether the servant was performing any act in furtherance of his master's business at the time of the accident. Conversely, an act of an employee done to effect some independent purpose of his own is not within the scope of his employment.") (cleaned up and citations omitted); see also Kirlin, 758 N.W.2d at 447 ("When a servant acts with an intention to serve *solely* his own interests, this act is not within the scope of employment, and his master may not be held liable for it.") (citation omitted).

Without more, Murphy's counterclaim for assault does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at

678 (quoting Twombly, 550 U.S. at 570). Merely stating "Dave committed these acts within the course and scope of his employment with Farmers Union, and Farmers Union is therefore liable under *respondeat superior*" is not enough under Twombly and Iqbal. Doc. 5 ¶ 132. These are mere "'labels and conclusions' . . . devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557)). There are no factual allegations in the Counterclaim of how Dave was acting within the scope of his employment for Farmers Union when he threatened to kick Murphy's ass in April of 2024 at a hotel bar in Costa Rica. Testimony about the incident in April of 2024 and Farmers Union's handling of it, as well as testimony about the March of 2022 encounter between Burkel and Murphy in Punta Cana, might be admissible to explain why Murphy left his position as an agent for Farmers Union, but that is a separate issue for a different day.

## IV. Conclusion

Based on the reasons explained above, it is

ORDERED that Farmers Union's Motion to Dismiss, Doc. 8, is granted. It is further

ORDERED that Murphy's Counterclaim for assault is dismissed without prejudice.

DATED this 17th day of November, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE